## THE STATE *v.* McLANE.

The stat. of 8th of March, 1841, providing that " in all criminal prosecutions in the Criminal Court of the First District, for crimes and offences punishable by not more than two years hard labor, the proceedings may be by information," was not repealed by the abolition of that court, and the substitution of other district courts by the constitution of 1845; and the stat. of 30th of April, 1846, organizing the district courts in the parish of Orleans, having directed (sec. 6) that all informations shall be filed in the First District Court, and this direction being necessarily understood as relating to all such informations as were authorized by the laws then in force, of which the act of 1841 was one, that act must be considered as extended to the First District Court.

A count for larceny may be joined, in the same indictment, with one for receiving stolen goods.

Though the different counts of an information be attached together by wafers, it is not necessary that each count should be signed by the prosecuting officer.

The different counts of an information are sufficiently identified as one proceeding, by being attached together by wafers.

It is discretionary with the judge of the first instance to direct the acquittal of one of several prisoners on trial for larceny and receiving stolen goods, that he may testify on the trial of the rest, if, in his opinion, the charge against him be unsupported.

APPEAL from the First District Court of New Orleans. *McHenry, J.* *Elmore*, Attorney General, for the State. *Budd* and *Redmond*, for the appellant. The judgment of the court was pronounced by

KING, J. The prisoner was convicted of larceny, and has appealed. The proceeding against him was by information, which he contends was unauthorized by law.

The act of the 8th of March, 1841, provides, " that in all criminal prosecutions in the Criminal Court of the First District, for crimes and offences punishable by not more than two years hard labor, the proceedings may be by information." Acts of 1841, p. 59.

It is contended, on behalf of the appellant, that this act applies exclusively to the Criminal Court of the First District, which has been abrogated by the consti-

STATE
*v.*
McLANE.

tution of 1845, and that the law itself has been thereby virtually repealed, having become inoperative.   It is further contended that, criminal proceedings in this State are to be conducted according to the rules of the common law, which restricts the use of information to misdemeanors.

We do not find it necessary to determine, whether informations may be filed for larceny in the district courts of the State generally.   Our enquiry is limited to the propriety of the proceedings in the parish of Orleans.   Previous to the adoption of the present constitution, the Criminal Court of the First District, had exclusive criminal jurisdiction within the territorial limits of that district.   B. & C's Dig. 194.   The 62d art. of the present constitution vests the judicial power of the State in a Supreme Court, in District Courts, and in justices of the peace; and the 73d art. confers upon District Courts unlimited jurisdiction in all criminal cases. Thus new tribunals have been created, which in the parish of Orleans, are clothed with all the jurisdiction in criminal matters formerly exercised by the Criminal Courts of the First District.

But, in substituting one set of courts for another, the framers of the constitution were careful to abolish none of the laws, in force at the time of its adoption, regulating judicial proceedings in the courts which were about to be superseded, and not to leave the newly created tribunals, in this respect, entirely dependent on future legislation.   The constitution was prepared with reference to the then existing laws,   and with the view of preventing the serious interruptions to judicial proceedings which it was foreseen would otherwise occur before the legislature could act.   It was expressly declared, in the 142d art. that, " all rights, actions, prosecutions, claims, and contracts, as well of individuals as of bodies corporate, *and all laws in force at the time of the adoption of this constitution,* and not inconsistent therewith, shall continue as if the same had not been adopted."

It is obvious that none of the laws regulating judicial proceedings were repealed by the adoption of the new constitution, and that while the framers of the constitution gave to the newly created tribunals all the jurisdiction, both civil and criminal, possessed by the courts which they were intended to replace, they also preserved the laws necessary to give them efficiency, and to enable them to exercise their respective jurisdictions in the same manner and to the same extent that they had previously been exercised.   Among the laws then in force, applicable to the only court of criminal jurisdiction in New Orleans, was the act of 1841, authorizing proceedings by information.   The legislature of 1846, while organizing the courts for the parish and city of New Orleans, in view of the previous legislation on this subject, which stood unrepealed, directed that the attorney general, and the district attorney, should file all informations in the First District Court.   This direction must be understood to relate to all such informations as were authorized by the laws then in force, of which the act of 1841 was one.

The other grounds upon which a reversal of the judgment of the lower court is urged, are :   1st. That two distinct offences are charged in the same information, to wit, larceny, and receiving goods knowing them to be stolen.   2d. That only one count of the information had been signed, and that the two counts are merely attached together by a wafer.   3d. That the district judge erred in refusing, after the testimony on the part of the State had been closed, to permit a separate verdict to be rendered as to Stewart, against whom, it is alleged, no evidence was adduced, in order that he might testify in behalf of the remaining parties accused.

I. The first ground has recently been considered; in the case of the *State* v. *Crosby, ante* p. 434, in which we sustained an information charging in different counts, as has been done in the present instance, the offences of larceny and of receiving stolen goods.

II. We have been referred to no authority in support of the position that, the different counts of an information should all be signed by the prosecuting officer. The practice, both in this State and under the system from which our rules of criminal proceedings are borrowed, is otherwise. The two counts were sufficiently identified as one proceeding, by being attached together, *State* v. *Lennon*, 8 Rob. 543.

III. It was discretionary with the judge to direct the acquittal of one of the prisoners that he might testify, if, in his opinion, the charge against him was unsupported. The judge, however, assigned as the reason for his refusal to direct a separate verdict, that he considered there was testimony against Stewart, and the jury appear to have been of the same opinion.

EUSTIS, C. J. *dissenting*. I concur in the opinion of my brethren, that the former legislation is to be left entirely out of view, in considering the right of the attorney general to institute this prosecution by information, with the single exception of the act of 1805, which establishes the common law as the rule of proceedings in criminal cases, and which has served as a guide for our courts ever since in criminal matters.

The reasons which have compelled me to withhold my assent to the conclusion of my brethren that, the law of 1841 is still in force, are these :

1. That law is of a peculiar character ; it is an exception to the general law of the State. It subjects the person committing a crime within the first district to prosecution at the will of the attorney general, against which, if the crime were committed in any other portion of the State, he would have been protected. 2. However convenient the prosecution by information of the offence of larceny may be in the administration of justice, and the law was passed undoubtedly to meet the exigencies created by the accumulation of criminal business in this capital, I do not consider that this mode of prosecution is necessary in a legal sense, that is, the mode of prosecution by indictment is adequate to ensure the punishment of all offenders. 3. The law of 1841 takes from the accused the protection of a grand jury. In criminal cases, except in misdemeanors, independent of this law, before the defendant can be put to answer the charge against him, the accusation must be warranted by the decision under oath of twelve men.

The Criminal Court of the First District having ceased to exist, and this law being recognised by no part of the act of 1846, organizing the District Courts, as I understand it, I do not feel myself at liberty to adjudge it to be saved by a remote and unnecessary implication.

I think the judgment ought to be arrested.*

*Judgment affirmed.*

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## STATE *v.* McLANE.

Decisions in *State* v. *McLane, ante* p. 435, affirmed.

---

* The Chief Justice must be considered as dissenting from the judgment in the case of the *State* v, *Crosby, ante p.* 434, so far as that case, being a prosecution by information before the First District Court of New Orleans, under the statute of 8th of March, 1841, conflicts with the dissenting opinion in this case.     R.